IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-10521

OLIVER "BUCK" REVELL,

Plaintiff-Appellant,

versus

HART G.W. LIDOV, an individual; BOARD OF TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK, a foreign corporation (Columbia
University); COLUMBIA UNIVERSITY SCHOOL OF JOURNALISM, an agency
and/or Department of Columbia University in the City of New York,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Texas

December 31, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Oliver "Buck" Revell sued Hart G.W. Lidov and Columbia
University for defamation arising out of Lidov's authorship of an
article that he posted on an internet bulletin board hosted by
Columbia. The district court dismissed Revell's claims for lack of
personal jurisdiction over both Lidov and Columbia. We affirm.

**I**

Hart G.W. Lidov, an Assistant Professor of Pathology and
Neurology at the Harvard Medical School and Children's Hospital,
wrote a lengthy article on the subject of the terrorist bombing of

Pan Am Flight 103, which exploded over Lockerbie, Scotland in 1988. The article alleges that a broad politically motivated conspiracy among senior members of the Reagan Administration lay behind their wilful failure to stop the bombing despite clear advance warnings. Further, Lidov charged that the government proceeded to cover up its receipt of advance warning and repeatedly misled the public about the facts. Specifically, the article singles out Oliver "Buck" Revell, then Associate Deputy Director of the FBI, for severe criticism, accusing him of complicity in the conspiracy and cover-up. The article further charges that Revell, knowing about the imminent terrorist attack, made certain his son, previously booked on Pan Am 103, took a different flight. At the time he wrote the article, Lidov had never been to Texas, except possibly to change planes, or conducted business there, and was apparently unaware that Revell then resided in Texas.

Lidov has also never been a student or faculty member of Columbia University, but he posted his article on a website maintained by its School of Journalism. In a bulletin board section of the website, users could post their own works and read the works of others. As a result, the article could be viewed by members of the public over the internet.

Revell, a resident of Texas, sued the Board of Trustees of Columbia University, whose principal offices are in New York City, and Lidov, who is a Massachusetts resident, in the Northern District of Texas. Revell claimed damage to his professional

2

reputation in Texas and emotional distress arising out of the alleged defamation of the defendants, and sought several million dollars in damages. Both defendants moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court granted the defendants' motions, and Revell now appeals.

**II**

**A**

Our question is whether the district court could properly exercise personal jurisdiction over Hart Lidov and Columbia University, an issue of law we review *de novo*.[1] The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence.[2] We must accept the plaintiff's "uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation."[3] In considering a motion to dismiss for lack of personal jurisdiction a district court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[4]

---

[1] *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir. 1996).

[2] *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

[3] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

[4] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

3

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution.[5]  Because Texas's long-arm statute reaches to the constitutional limits,[6] we ask, therefore, if exercising personal jurisdiction over Lidov and Columbia would offend due process.

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"[7]  Sufficient minimum contacts will give rise to either specific or general jurisdiction.[8]  "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"[9]  Specific jurisdiction

---

[5] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[6] *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

[7] *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[8] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

[9] *Mink*, 190 F.3d at 336.

4

arises when the defendant's contacts with the forum "arise from, or are directly related to, the cause of action."[10]

**B**

Answering the question of personal jurisdiction in this case brings these settled and familiar formulations to a new mode of communication across state lines. Revell first urges that the district court may assert general jurisdiction over Columbia because its website provides internet users the opportunity to subscribe to the *Columbia Journalism Review*, purchase advertising on the website or in the journal, and submit electronic applications for admission.[11]

This circuit has drawn upon the approach of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*[12] in determining whether the operation of an internet site can support the minimum contacts necessary for the exercise of personal jurisdiction.[13] *Zippo* used a "sliding scale" to measure an internet site's connections to a forum state.[14] A "passive" website, one that merely allows the owner to post information on the internet, is at one end of the

---

[10] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (internal quotation marks omitted).

[11] The district court did not address Revell's general jurisdiction argument. It was made and we reach the issue. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

[12] 952 F. Supp. 1119 (W.D. Pa. 1997).

[13] *Mink*, 190 F.3d at 336.

[14] *Zippo*, 952 F. Supp. at 1124.

5

scale.[15]  It will not be sufficient to establish personal jurisdiction.[16]  At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction may be proper.[17]  In between are those sites with some interactive elements, through which a site allows for bilateral information exchange with its visitors.  Here, we find more familiar terrain, requiring that we examine the extent of the interactivity and nature of the forum contacts.[18]

While we deployed this sliding scale in *Mink v. AAAA Development LLC*, it is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.[19]

Irrespective of the sliding scale, the question of general jurisdiction is not difficult here.  Though the maintenance of a

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ("[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.").

website is, in a sense, a continuous presence everywhere in the world, the cited contacts of Columbia with Texas are not in any way "substantial."[20]

Columbia's contacts with Texas are in stark contrast to the facts of the Supreme Court's seminal case on general jurisdiction, *Perkins v. Benguet Consolidated Mining Co.*[21]  In *Perkins*, a Philippine corporation temporarily relocated to Ohio.[22]  The corporation's president resided in Ohio, the records of the corporation were kept in Ohio, director's meetings were held in Ohio, accounts were held in Ohio banks, and all key business decisions were made there.[23]  Columbia's internet presence in Texas quite obviously falls far short of this standard.

Our conclusion also comports with the recent decision in *Bird v. Parsons*,[24] where the Sixth Circuit found Ohio courts lacked general jurisdiction over a non-resident business that registered domain names despite the fact that: (1) the defendant maintained a website open for commerce with Ohio residents and (2) over 4000 Ohio residents had in fact registered domain names with the

---

[20] *See Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994) (finding no personal jurisdiction over individual defamation defendants where the defendants did not conduct regular business in Texas and did not make a substantial part of their business decisions in Texas).

[21] 342 U.S. 437, 438 (1952).

[22] *Id.* at 447–48.

[23] *Id.*

[24] 289 F.3d 865 (6th Cir. 2002).

defendant.[25]  By contrast, Columbia, since it began keeping records, never received more than twenty internet subscriptions to the *Columbia Journalism Review* from Texas residents.[26]

C

Turning to the issue of specific jurisdiction, the question is whether Revell has made out his *prima facie* case with respect to the defendants' contacts with Texas.  *Zippo*'s scale does more work with specific jurisdiction—the context in which it was originally conceived.[27]

Revell urges that, given the uniqueness of defamation claims and their inherent ability to inflict injury in far-flung jurisdictions, we should abandon the imagery of *Zippo*.  It is a bold but ultimately unpersuasive argument.  Defamation has its unique features, but shares relevant characteristics with various business torts.[28]  Nor is the *Zippo* scale, as has been suggested,

---

[25] *Id.* at 873-74.

[26] More precisely, there were 17 subscriptions by Texas residents in 2000 and 18 for the first two issues in 2001.  R. at 305.

[27] *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) (noting that the plaintiff conceded that only specific jurisdiction was at issue in the case).

[28] *See Indianapolis Colts v. Metro. Balt. Football Club Ltd. P'ship*, 34 F.3d 410, 411-12 (7th Cir. 1994).

in tension with the "effects" test of *Calder v. Jones*[29] for intentional torts,[30] which we address in Part II.D.

For specific jurisdiction we look only to the contact out of which the cause of action arises[31]—in this case the maintenance of the internet bulletin board. Since this defamation action does not arise out of the solicitation of subscriptions or applications by Columbia, those portions of the website need not be considered.

The district court concluded that the bulletin board was "*Zippo*-passive" and therefore could not create specific jurisdiction. The defendants insist that Columbia's bulletin board is indistinguishable from the website in *Mink*. In that case, we found the website would not support a finding of minimum contacts because it only solicited customers, provided a toll-free number to call, and an e-mail address.[32] It did not allow visitors to place orders online.[33] But in this case, any user of the internet can post material to the bulletin board. This means that individuals *send* information to be posted, and *receive* information that others have posted. In *Mink* and *Zippo*, a visitor was limited to

---

[29] 465 U.S. 783 (1984).

[30] We need not decide today whether or not a "*Zippo*-passive" site could still give rise to personal jurisdiction under *Calder*, and reserve this difficult question for another time.

[31] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

[32] *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999).

[33] *Id.* at 337.

9

expressing an interest in a commercial product.  Here the visitor may participate in an open forum hosted by the website.[34] Columbia's bulletin board is thus interactive, and we must evaluate the extent of this interactivity as well as Revell's arguments with respect to *Calder.*

**D**

**1**

In *Calder*, an editor and a writer for the *National Enquirer*, both residents of Florida, were sued in California for libel arising out of an article published in the *Enquirer* about Shirley Jones, an actress.[35]  The Supreme Court upheld the exercise of personal jurisdiction over the two defendants because they had "expressly aimed" their conduct towards California.[36]

> The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. *In sum, California is the focal point both of the story and of the harm suffered.*[37]

---

[34] *See, e.g.*, *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 728 (E.D. Pa. 1999) (finding interactive internet newsgroups where defendant posted messages in common cyberspace accessible to all but ultimately holding personal jurisdiction could not be obtained).

[35] *Calder*, 465 U.S. at 784-85.

[36] *Id.* at 789.

[37] *Id.* at 788-89 (emphasis added).

10

The Court also relied upon the fact that the *Enquirer* had its largest circulation-over 600,000 copies-in California, indicating that the defendants knew the harm of their allegedly tortious activity would be felt there.[38]

**2**

Revell urges that, measured by the "effects" test of *Calder*, he has presented his *prima facie* case for the defendants' minimum contacts with Texas. At the outset we emphasize that the "effects" test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum.[39]

We find several distinctions between this case and *Calder*—insurmountable hurdles to the exercise of personal jurisdiction by Texas courts. First, the article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder*, in which the article contained descriptions of the California activities of the plaintiff, drew upon California

---

[38] *Id.* at 789-90 ("And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation.").

[39] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

sources, and found its largest audience in California.[40]  This conclusion fits well with our decisions in other intentional tort cases where the plaintiff relied upon *Calder.*  In those cases we stated that the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*.[41] We also find instructive the defamation decisions of the Sixth, Third, and Fourth Circuits in *Reynolds v. International Amateur Athletic Federation*,[42] *Remick v. Manfredy*,[43] and *Young v. New Haven Advocate*,[44] respectively.

In *Reynolds* a London-based association published a press release regarding the plaintiff's disqualification from

---

[40] *Calder*, 465 U.S. at 788; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) (noting that the harm of a libelous publication is felt where it is distributed).

[41] *See Panda Brandywine*, 253 F.3d at 870 ("If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts ....."); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772-73 (5th Cir. 1988) (rejecting application of *Calder* and describing the plaintiff's decision to maintain its principal place of business in the forum state as "a mere fortuity" that could not support personal jurisdiction).  *But see Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (finding personal jurisdiction over a California business proper under *Calder* on the basis that the defendant's alleged threatening of one of the plaintiff's customers in New Jersey injured the plaintiff, an Illinois business, in Illinois); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 263-65 (3d Cir. 1998) (recognizing circuit split between *Janmark* and views of the First, Fourth, Fifth, Eighth, Ninth and Tenth Circuits and adopting the majority view).  We do not suggest that the analysis for defamation claims under *Calder* should differ from that utilized in our other cases, but merely provide further explication because this case is factually more similar to *Calder*.

[42] 23 F.3d 1110 (6th Cir. 1994).

[43] 238 F.3d 248 (3d Cir. 2001).

[44] – F.3d –, No. 01-2340, 2002 WL 31780988, at *1 (4th Cir. Dec. 13, 2002).

12

international track competition for two years following his failure of a drug test.[45] The plaintiff, an Ohio resident, claimed that the alleged defamation had cost him endorsement contracts in Ohio and cited *Calder* in support of his argument that personal jurisdiction over the defendant in Ohio was proper.[46] The court found *Calder* inapposite because, *inter alia*, the allegedly defamatory press release dealt with the plaintiff's activities in Monaco, not Ohio; the source of the report was a urine sample taken in Monaco and analyzed in Paris; and the "focal point" of the release was not Ohio.[47] We agree with the *Reynolds* court that the sources relied upon and activities described in an allegedly defamatory publication should in some way connect with the forum if *Calder* is to be invoked.[48] Lidov's article, insofar as it relates to Revell, deals exclusively with his actions as Associate Deputy Director of

---

[45] 23 F.3d at 1112.

[46] *Id.* at 1119-20.

[47] *Id.* at 1120. The court also cited two distinctions arguably not present in this case: that the plaintiff's professional reputation was not centered in Ohio, and that the defendant did not itself publish or circulate the report in Ohio. *Id.* However, the defendant in *Reynolds* clearly knew that the plaintiff was an Ohio resident, unlike Lidov. *See* Part II.D.3.

[48] The Tenth Circuit has suggested that this is not a requirement of *Calder*. In *Burt v. Board of Regents of University of Nebraska*, 757 F.2d 242 (10th Cir. 1985), *vacated as moot*, *Connolly v. Burt*, 475 U.S. 1063 (1986), the court upheld the application of *Calder* to support personal jurisdiction in Colorado where a University of Nebraska doctor had written unflattering and allegedly defamatory letters about the plaintiff in response to requests from Colorado hospitals, despite the fact that the content of the letters focused on the plaintiff's activities in Nebraska, not Colorado. *Id.* at 244-45. We find more persuasive the view of Judge Seth, who remarked, in dissent, that this represented "but half a *Calder*," which requires both the harm to be felt in the forum *and* that the forum be the focal point of the publication. *Id.* at 245-47 (Seth, J., dissenting).

13

the FBI—just as the offending press release in *Reynolds* dealt only with a failed drug test in Monaco. It signifies that there is no reference to Texas in the article or any reliance on Texas sources. These facts weigh heavily against finding the requisite minimum contacts in this case.

In *Remick* the plaintiff, a Pennsylvania lawyer, sued several individuals for defamation arising out of two letters sent to the plaintiff in Pennsylvania containing oblique charges of incompetence and accusations that the plaintiff was engaged in extortion of the defendants.[49] The letters concerned the termination of the plaintiff's representation of one of the defendants, a professional boxer.[50] One of the two letters was read by individuals other than the plaintiff when it was faxed to the plaintiff's Philadelphia office.[51] The court held, however, that since there was nothing in the letter to indicate that it was targeted at Pennsylvania residents other than the plaintiff, personal jurisdiction could not be obtained under *Calder*.[52] Furthermore, the court noted that allegations that the charges in the letter had been distributed throughout the "boxing community"

---

[49] *Remick*, 238 F.3d at 257-58.

[50] *Id.*

[51] *Id.* at 257.

[52] *Id.* at 259.

14

were insufficient, because there was no assertion that Pennsylvania had a "unique relationship with the boxing industry, as distinguished from the relationship in *Calder* between California and the motion picture industry, with which the *Calder* plaintiff was associated."[53]

Similarly, in *Young v. New Haven Advocate*,[54] two newspapers in Connecticut posted on the internet articles about the housing of Connecticut prisoners in Virginia that allegedly defamed a Virginia prison warden. The Fourth Circuit held that Virginia could not exercise personal jurisdiction over the Connecticut defendants because "they did not manifest an intent to aim their websites or the posted articles at a Virginia audience."[55] Following its decision in *ALS Scan, Inc. v. Digital Service Consultants*,[56] it reasoned that "application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity

---

[53] *Id.; see also ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (finding *Calder* inapplicable where allegedly tortious business activity was focused "more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina"); *Pavlovich v. Superior Court*, 29 Cal. 4th 262, 265-66 (2002) (rejecting the personal jurisdiction of California courts in a trade secret infringement case over a Texan who posted the offending computer code on a website).

[54] – F.3d –, No. 01-2340, 2002 WL 31780988, at *1 (4th Cir. Dec. 13, 2002).

[55] *Id.*

[56] 293 F.3d 707 (4th Cir. 2002).

15

is expressly directed at or directed to the forum state."[57]  It observed that more than simply making the news article accessible to Virginians by defendants' posting of the article on their internet sites was needed for assertion of jurisdiction: "The newspapers must, through the Internet postings, manifest an intent to *target* and *focus* on Virginia readers."[58]

As with *Remick* and *Young*, the post to the bulletin board here was presumably directed at the entire world, or perhaps just concerned U.S. citizens.  But certainly it was not directed specifically at Texas, which has no especial relationship to the Pan Am 103 incident.  Furthermore, here there is nothing to compare to the targeting of California readers represented by approximately 600,000 copies of the *Enquirer* the *Calder* defendants knew would be distributed in California, the *Enquirer*'s largest market.[59]

### 3

As these cases aptly demonstrate, one cannot purposefully avail oneself of "some forum someplace"; rather, as the Supreme

---

[57] *Young*, 2002 WL 31780988, at *5 (citing *ALS*, 293 F.3d at 714).

[58] *Id.*

[59] *Calder v. Jones*, 465 U.S. 783, 785 n.2 (1984).

Court has stated, due process requires that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[60] Lidov's affidavit, uncontroverted by the record, states that he did not even know that Revell was a resident of Texas when he posted his article. Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test.[61] The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum, as *Calder* itself[62] and numerous cases from other circuits applying *Calder* confirm.[63] Demanding knowledge of a particular forum to which conduct is directed, in defamation cases, is not altogether

---

[60] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[61] Further evidence that the *Calder* defendants knew that the harm of their conduct would be felt in California came from their knowledge that the *Enquirer* enjoyed its largest circulation there. *Id.* at 789.

[62] *Calder*, 465 U.S. at 790 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, *knowingly cause the injury in California*." (emphasis added)).

[63] *See, e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (stating that *Calder* requires that "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant *knows to be a resident of the forum state*" (emphasis added)); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998) ("[T]he plaintiff must show that the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct *in the forum*, and point to specific activity indicating that the defendant expressly aimed its tortious conduct *at the forum*." (emphasis added)).

17

distinct from the requirement that the forum be the focal point of the tortious activity because satisfaction of the latter will ofttimes provide sufficient evidence of the former.

Lidov must have known that the harm of the article would hit home wherever Revell resided. But that is the case with virtually any defamation. A more direct aim is required than we have here. In short, this was not about Texas. If the article had a geographic focus it was Washington, D.C.

### III

Our ultimate inquiry is rooted in the limits imposed on states by the Due Process Clause of the Fourteenth Amendment. It is fairness judged by the reasonableness of Texas exercising its power over residents of Massachusetts and New York. This inquiry into fairness captures the reasonableness of hauling a defendant from his home state before the court of a sister state; in the main a pragmatic account of reasonable expectations – if you are going to pick a fight in Texas, it is reasonable to expect that it be settled there. It is not fairness calibrated by the likelihood of success on the merits or relative fault. Rather, we look to the geographic focus of the article, not the bite of the defamation, the blackness of the calumny, or who provoked the fight.

Revell also makes various evidentiary objections to the affidavits introduced by the defendants to support their motions to

18

dismiss.  We conclude that all of these lack merit, and the district court did not abuse its discretion in rejecting them.[64] Alternatively, Revell asks that we remand for further discovery, but given the uncontroverted facts of the operation of Columbia's website, and lack of purposeful availment, we must decline to do so.[65]

**IV**

In sum, Revell has failed to make out a *prima facie* case of personal jurisdiction over either defendant.  General jurisdiction cannot be obtained over Columbia.  Considering both the "effects" test of *Calder* and the low-level of interactivity of the internet bulletin board, we find the contacts with Texas insufficient to establish the jurisdiction of its courts, and hence the federal district court in Texas, over Columbia and Lidov.  We AFFIRM the dismissal for lack of personal jurisdiction as to both defendants.

AFFIRMED.

---

[64] *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996).

[65] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (affirming denial of discovery that "could not have added any significant facts" (internal quotation marks omitted)).