**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 12, 2006**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

---

m 05-20957
Summary Calendar

---

ANWAR OUAZZANI-CHAHDI,

Plaintiff-Appellant,

VERSUS

GREENSBORO NEWS & RECORD, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas
m 4:05-CV-1898

---

Before SMITH, WIENER, and OWEN,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Anwar Ouazzani-Chahdi, an attorney ap-
pearing *pro se*, sued Greensboro News & Rec-

---

* Pursuant to 5TH CIR. R. 47.5, the court has de-
termined that this opinion should not be published
and is not precedent except under the limited cir-
cumstances set forth in 5TH CIR. R. 47.5.4.

ord, Inc. ("News & Record"), for slander *per
se*, negligence, and gross negligence based on
an allegedly defamatory news article. The
district court dismissed for lack of personal
jurisdiction. We affirm.

I.

News & Record, a North Carolina corpora-
tion with principal place of business there,
publishes the *News & Record*, a newspaper
circulated primarily in Guilford County, North
Carolina. Of the paper's 95,600 daily copies,

99% are distributed in North Carolina; only three subscriptions are distributed in Texas.

In 2004 the *News & Record* published a story about sham marriages used by immigrants to obtain United States citizenship illegally. Lynn Hey, *Fake-marriage schemes commonplace*, NEWS & RECORD (Greensboro, N.C.), Apr. 25, 2004, at A1. The article focused on a local immigration attorney, Manlin Chee, who was allegedly under investigation by the FBI for helping immigrants arrange such marriages. The article mentioned five domestic relations cases that had been filed in Guilford County, North Carolina. Chee represented one of the parties in each of the five cases, and all of them involved marriages that were allegedly shams.

One of these marriages was that of Ouazzani-Chahdi, who had hired Chee to represent him in his divorce. Ouazzani-Chahdi, who used to reside in North Carolina, is now a Texas citizen. The story alleged, based on quotations from his ex-wife and her lawyer, that Ouazzani-Chahdi had married to obtain permanent legal resident status. The lawyer stated that had Ouazzani-Chahdi's ex-wife known that this was his motivation she would not have married him.[1]

Ouazzani-Chahdi sued News & Record in Texas state court, asserting that the defamatory article had caused him physical and reputational harm. News & Record removed to federal court *via* diversity jurisdiction under 28 U.S.C. § 1332, then successfully moved under Federal Rule of Civil Procedure 12-(b)(2) to dismiss for lack of personal jurisdiction.

## II.

The district court held that it lacked both general and specific jurisdiction over News & Record. Ouazzani-Chahdi appeals only the finding that the court lacked specific jurisdiction.

We review *de novo* a district court's determination that it lacks personal jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir.

---

[1] The mention of Ouazzani-Chahdi is, in its entirety, as follows:

In 1998, Myriah I. Ouazzani-Chahdi filed for an annulment of her marriage to Anwar Ouazzani-Chahdi, who was not a U.S. citizen. In her complaint, the wife called her marriage a "sham, as a means for obtaining permanent legal resident status" for Anwar Ouazzani-Chahdi.

"Had she known that (Anwar Ouazzani-Chahdi) was marrying her to obtain legal residence status with the (Immigration and Naturalization Service), she would have never married

(continued...)

---

[1](...continued)
ried him," her lawyer, John W. Lunsford, wrote to the court.

Anwar Ouazzani-Chahdi hired Chee to represent him. Chee responded that there was no deception and that the couple had attended marriage counseling to salvage the relationship.

Lunsford said in an interview last week that wasn't the case, Anwar Ouazzani-Chahdi quickly lost interest in his new life after the marriage was complete. Lunsford said the couple lived together only a short time.

"It wasn't what we consider a real marriage," Lunsford said.

Attempts to reach Anwar Ouazzani-Chahdi were unsuccessful.

A judge refused the annulment but later granted Myriah Ouazzani-Chahdi a divorce, Lunsford said. Citizenship records are not public, and it is unclear whether Anwar Ouazzani-Chahdi became a citizen.

2002). The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). All relevant factual disputes are resolved in plaintiff's favor. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for specific jurisdiction has been presented." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal district court sitting in diversity may exercise personal jurisdiction over a defendant if (1) the long-arm statute of the forum state establishes personal jurisdiction and (2) the exercise of personal jurisdiction does not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Revell*, 317 F.3d at 469. Texas's long-arm statute reaches to the limits permitted by the Constitution, so the inquiry collapses into whether the exercise of jurisdiction over News & Record would offend due process. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

The Due Process Clause "operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984). It permits courts to exercise personal jurisdiction over a foreign defendant where (1) "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Revell*, 317 F.3d at 470 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Specific jurisdiction in suits alleging an intentional tort based on the publication of defamatory material exists for (1) publication with adequate circulation in the forum state or (2) an author or publisher who "aims" a story at the state knowing that the "effects" of the story will be felt there. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984); *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). Ouazzani-Chahdi does not appeal the holding that News & Record's circulation of three copies in Texas falls short of an "adequate circulation in the state" such that personal jurisdiction is warranted under *Keeton*. Thus, we turn to the "effects" test of *Calder*.

As distinguished from *Keeton* jurisdiction, which is based on the number of subscriptions distributed in the forum, *Calder* jurisdiction requires a "case-by-case analysis of the purpose and impact of the publication in question." *Fielding*, 415 F.3d at 425. In addition to requiring that the "effects" of the story be felt in the forum, this court has held that the "aim" of the defendant under the *Calder* test must be demonstrated by showing that (1) "the subject matter of and (2) the sources relied upon for the article were in the forum state." *Id.* at 426 (citing *Revell*, 317 F.3d at 474 & n.48).

III.

In *Calder* the plaintiff was a California resident who sued an editor and a writer for the *National Enquirer*, both residents of Florida, for libel in California state court. The Supreme Court upheld personal jurisdiction over defendants because they had "expressly aimed" the article toward California. *Calder*, 465 U.S. at 789. The Court based this conclusion on several factors: The story drew on California sources, it focused on the California activities of a California resident, and the bulk of the harm caused to the plaintiff was

suffered in California. *Id.* at 788-89. The Court also noted that the *National Enquirer* circulated more copies in California than in any other state, so defendants knew that the brunt of the injury to the plaintiff would be felt in California. *Id.* at 790. The *Enquirer* had a total circulation of 5 million, of which 600,000 were sold in California. *Id.* at 785.

We elaborated on the *Calder* test in *Fielding*, a case concerning defamatory articles published by two German magazines about a Texas resident who had lived in Berlin. *Fielding*, 415 F.3d at 422-24. The story defamed the plaintiff and falsely reported that her husband had had an extramarital affair in Europe. The article made reference to plaintiff's college years and modeling career in Texas and used sources in Texas to conduct background research. *Id.* at 426. Of the magazine's total weekly circulation of 750,000, 70 copies were distributed in Texas. Despite these contacts, we held that personal jurisdiction could not be exercised over the foreign defendant, because the article "concerned the German activities of individuals in Germany." *Id.* at 427. Further, another indicator that the article was plainly "aimed" at Germany was that 97% of the issues were sold there. *Id.*

The present case resembles the facts of *Fielding* much more than those of *Calder*. As we have said, News & Record circulated only three copies in Texas, far fewer than the 600,000 that were sent in *Calder* (in which personal jurisdiction was found to exist), and also fewer than the 70 in *Fielding* (in which no jurisdiction was found). The *News & Record* article covered the North Carolina activities of persons there. All five of the marriages described, including Ouazzani-Chahdi's, involved a domestic relations action filed in North Carolina. No Texas sources were used in the story, and there was no mention of Texas. These facts stand in stark contrast to those

found in *Calder*, in which the publisher relied on California sources to cover the California activities of a California resident.

Here the contacts with the forum are even more scant than were those in *Fielding*, in which personal jurisdiction was not found. The German magazine in *Fielding* relied on at least some Texas sources and tangentially covered plaintiff's Texas background. This court ruled that those contacts were insufficient to establish that the defendant "aimed" its conduct toward Texas under *Calder*. News & Record distributed fewer copies to the forum than were distributed in *Fielding*, used fewer forum sources, and included less material about the forum in the story (indeed, no material at all). Consequently, News & Record did not sufficiently "aim" its conduct toward Texas such that a Texas court can exercise personal jurisdiction.

Ouazzani-Chahdi bases his argument in large part on the availability of his biographical information, including his Texas residency, on the internet. If one enters his name into particular internet search engines, one result will be a website indicating that he is employed by a Houston law firm. He thus asserts that even if News & Record was unaware that he resided in Texas, this could be discovered with minimal effort.

We must resolve all factual disputes in favor of Ouazzani-Chahdi. Despite this, the sole fact that News & Record knew, or could have determined through an internet search, that Ouazzani-Chahdi now works at a Texas firm is insufficient to establish personal jurisdiction under *Calder*. "[T]he plaintiff's mere residence in the forum state is not sufficient to show that the defendant had knowledge that effects would be felt there; a 'more direct aim is required.'" *Fielding,* 415 F.3d at 427 (quoting *Revell*, 317 F.3d at 476). As discussed above, there is no evidence, other than the fact

of a mere three subscriptions, that defendants "aimed" any conduct toward Texas.

In sum, Ouazzani-Chahdi failed to make a *prima facie* showing of personal jurisdiction over News & Record. We AFFIRM the dismissal for want of personal jurisdiction.