**Franklin M. EPSTEIN, Plaintiff,**

v.

**GRAY TELEVISION, INC., Gray Television Group, Inc, Domonique Benn, and Diane Parker, Defendants.**

**No. 06–CV–431–WRF.**

United States District Court,
W.D. Texas,
San Antonio Division.

Jan. 5, 2007.

David F. Bragg, Bragg Chumlea McQuality an Association of Professional Corp., Austin, TX, Joseph G. Chumlea, Bragg Chumlea McQuality, Dallas, TX, for Plaintiff.

Paul C. Watler, Jenkens & Gilchrist, P.C., Dallas, TX, Seagal V. Wheatley, Jenkens & Gilchrist, San Antonio, TX, for Defendants.

## ORDER DENYING DEFENDANT BENN'S 12(b)(2) MOTION TO DISMISS

FURGESON, District Judge.

BEFORE THE COURT is Defendant Domonique Benn's Rule 12(b)(2) Motion to Dismiss (Docket No. 11), filed July 14, 2006; Plaintiff's Response (Docket No. 30), filed November 21, 2006; and Defendant Benn's Reply (Docket No. 37), filed December 6, 2006. The parties appeared before the Court for a hearing on this matter on December 19, 2006. After due consideration, the Court is of the opinion that Defendant Benn's 12(b)(2) Motion to Dismiss should be DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

This libel action is based on news broadcasts reporting on malpractice suits against Plaintiff.[1] In November and December of 2005, WRDW–TV, owned by Defendants Gray Television, Inc. and Gray Television Group, Inc., broadcast over its station an allegedly libelous report concerning Plaintiff. The report discussed South Carolina lawsuits against Plaintiff filed by former South Carolina patients.[2] Entitled "Bad Medicine," the reports were broadcast from Augusta, Georgia to Aiken, South Carolina–WRDW–TV's coverage area.[3] Versions of the reports were also posted on WRDW–TV's globally-accessible website.[4] In late February 2006, WRDW–TV broadcast a follow-up story on Plaintiff.[5]

At the time of the broadcast, Plaintiff lived in San Antonio, Texas serving as Chief of Neurosurgery at South Texas Veterans Administration Hospital.[6] Plain-

---

1. See Pl.'s First Am. Compl. (Docket No. 27).

2. Id.

3. Gray Defs.' Mot. to Dismiss (Docket No. 12 at 1).

4. Pl.'s First Am. Compl. (Docket No. 27 at 8).

5. Id.

6. Pl.'s Resp. to Parker's Mot. to Dismiss (Docket No. 32 at 1).

tiff had moved to San Antonio from South Carolina in 2003.[7] Plaintiff practiced neurosurgery in South Carolina for fifteen years.[8] Before his move to Texas, however, several patients implicated Plaintiff in malpractice suits. The WRDW–TV reports indicated that at least eleven malpractice or personal injury claims had been brought against Plaintiff in Aiken County, South Carolina.[9] While at least five of these claims had settled at the time of broadcast, the report highlighted a 1998 malpractice suit against Plaintiff resulting in a $3 million verdict.[10] The story and website included quotes from several of Plaintiff's former patients.[11]

Defendant Benn, a resident of Georgia, was the WRDW–TV anchor who investigated, prepared, and ultimately presented the malpractice story. In the course of preparing the report, Defendant Benn interviewed many people. While many of her interviewees were former patients in South Carolina and Georgia, Defendant Benn also sought statements from Texas sources. Benn interviewed Plaintiff during a phone call from Benn to Plaintiff's Texas location.[12] Before recording this phone call, Defendant Benn researched Texas law on consent for taping telephone conversations.[13] Defendant Benn also searched the Texas Medical Board website for claims against Plaintiff.[14]

The broadcast reached only the WRDW–TV coverage area in South Carolina and Georgia, but Benn's own actions exceeded that geographical region. Benn reported concern that citizens of San Antonio were unaware of Plaintiff's South Carolina malpractice cases.[15] In doing so, Benn questioned Plaintiff's reporting obligation to the Texas Board of Medical Examiners and the hospital in San Antonio.[16] Defendant Benn contacted the Veteran's Administration and supplied them with her web stories and videos about Plaintiff.[17] The Veteran's Administration's Inspector General's office subsequently initiated an investigation of Plaintiff in Texas.[18] Defendant Benn also sent a videotape of the broadcast and a printed script to an affiliate news station in San Antonio, Texas.[19] Benn closed her website report with a comment encouraging viewers to come forward about malpractice: "Other former patients of [Plaintiff] have come forward during our investigation. If you feel you have been a victim of medical negligence or personal injury by any doctor, you have the right to file paperwork with that state's Board of Medical Examiners." [20]

On May 22, 2006—just three months after the airing of the follow-up story— Plaintiff brought this action for defamation in federal court in San Antonio, Texas based on diversity of citizenship.[21] Defendant Benn filed her 12(b)(2) Motion to Dismiss shortly thereafter, asserting that

---

7. *Id.*

8. *Id.*

9. Pl.'s App. to Defs.' Mot. (Docket No. 34, App. D–2, at 3).

10. *Id.* at 4.

11. *Id.*

12. Pl.'s App. to Defs.' Mot. (Docket No. 34, App. D–3, at 3).

13. *Id.* at App. D–1, at 14.

14. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss (Docket No. 30, at 9).

15. *Id.* at App. D–3, at 2.

16. *Id.* at 2–3.

17. *Id.* at App. D–4.

18. *Id.*

19. *Id.* at App. A, at 11. As of this date, the San Antonio station has not actually done a story on Plaintiff.

20. *Id.* at App. D–3, at 3.

21. Pl.'s First Am. Compl. (Docket No. 27 at 9).

she is not subject to personal jurisdiction in Texas. Specifically, Defendant Benn contends that broadcasting the story on-air, publishing it on the website, and phoning Plaintiff in Texas do not amount to sufficient contacts with Texas that would permit jurisdiction over her. Moreover, Defendant Benn believes that even if such contacts existed, bringing her into court in Texas would violate legal considerations of fairness and justice due to her residency in Georgia and the South Carolina focus of the libel claim.

In response, Plaintiff argues that Defendant Benn specifically aimed her actions at Texas, and is therefore properly before a federal court located in Texas. Additionally, Plaintiff contends that it would be equally unfair to force Plaintiff into court in South Carolina when Defendant Benn can rightfully stand before a court located in Texas.

### STANDARD OF REVIEW

■■■ The party invoking the jurisdiction of the federal court bears the burden of establishing jurisdiction, but need only present prima facie evidence.[22] If conflicts exist between facts alleged by the plaintiff and those alleged by the defendants in the parties' affidavits, such conflicts must be resolved in the plaintiff's favor.[23] In resolving a jurisdictional issue, a court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof.[24]

### DISCUSSION

■■■ Upon review of the applicable documents, the Court finds that it has personal jurisdiction over Defendant Benn. A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution.[25] Texas's long-arm statute reaches to the constitutional limits, so the Court must only determine whether subjecting Defendant Benn to suit in Texas would offend due process.[26]

■■■ The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[27] Sufficient minimum contacts will give rise to either specific or general jurisdiction.[28] Specific jurisdiction applies

---

**22.** *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 625 (5th Cir.1999); *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 854 (5th Cir. 2000).

**23.** *Guidry,* 188 F.3d at 626; *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir.2000).

**24.** *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985).

**25.** *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999).

**26.** *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *Electrosource, Inc. v. Horizon Battery Tech., Ltd.,* 176 F.3d 867, 871 (5th Cir.1999).

**27.** *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Due Process Clause provides, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

**28.** *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994).

when "a controversy is related to or 'arises out of' a [nonresident] defendant's contacts with the forum."[29] General jurisdiction, comparatively, exists when a nonresident defendant's contacts with the forum state are "continuous and systematic," although unrelated to the particular cause of action.[30]

In the case at bar, Plaintiff does not assert that the Court has general jurisdiction over Defendant Benn. Accordingly, the Court must determine whether this libel action "arises out of" Defendant Benn's contacts with Texas so as to subject her to specific jurisdiction. The Supreme Court established an "effects" test for jurisdiction for intentional torts in *Calder v. Jones*.[31] The Supreme Court ruled that a forum state may exercise its jurisdiction when a defendant "expressly aim[s]" allegedly tortious acts at the forum state such that the forum state serves as the "focal point" for the "effects" of the conduct.[32]

In *Calder*, a nationally circulated magazine published a libelous article about a California citizen.[33] Although the article's writers and publishers worked from Florida, the Court upheld personal jurisdiction in California. Explaining its decision, the Court noted that the article concerned California activities, the plaintiff's career was centered in California, the article was drawn from California sources, and the brunt of the harm was felt in California

because the magazine had its largest circulation in that state.[34]

Discussing *Calder*, the Fifth Circuit denied personal jurisdiction over defendants in *Revell v. Lidov*.[35] In *Revell*, the plaintiff, a Texas resident, sued two nonresident defendants in a Texas federal court.[36] The plaintiff asserted that the defendants had posted an allegedly defamatory article on a university-owned website.[37] Although it determined that the defendants' website was interactive, the Fifth Circuit refused to grant personal jurisdiction, concluding that the defendants had not expressly aimed their conduct at Texas.[38] Specifically, the article contained no references to Texas, did not refer to Texas activities of the plaintiff, and was not directed at Texas readers.[39] While acknowledging that the plaintiff suffered harm in Texas, the Fifth Circuit reiterated "that the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction. . . ."[40]

The case at bar presents something of a mix between the facts of *Calder* and *Revell*, but upon close comparison, this Court finds that it has personal jurisdiction over Defendant Benn. Examining the facts as did the courts in *Calder* and *Revell*, the Court first looks to the location of the Plaintiff and the activities concerned in the alleged defamatory statement. In the present case, Plaintiff is currently located

---

29. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

30. *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868.

31. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

32. *Id.* at 789, 104 S.Ct. 1482.

33. *Id.* at 788, 104 S.Ct. 1482.

34. *Id.* at 788–89, 104 S.Ct. 1482.

35. 317 F.3d 467 (5th Cir.2002).

36. *Id.* at 469.

37. *Id.*

38. *Id.* at 473.

39. *Id.*

40. *Id.*

in Texas, but was located in South Carolina at the time of the pertinent acts. The broadcasts primarily focused on Plaintiff's South Carolina activities, but made slight references to his practice in Texas. Plaintiff's career center in this case is, at least currently, Texas. The sources for the report were predominantly from South Carolina, although the evidence indicates that Defendant Benn interviewed Plaintiff during a phone call to Texas. At this juncture of the analysis, the *Calder* and *Revell* factors fail to provide the Court with a clear jurisdictional answer.

The final "harm" factor, however, tips the scales in favor of exercising personal jurisdiction over Defendant Benn in Texas. The Court in *Calder* emphasized that because the harm of a libelous publication is felt where it is distributed and the magazine in that case had its largest circulation in the forum state, the forum state felt the brunt of the harm.[41] In the case at hand, however, the harm analysis is not so simple. Defendant Benn urges the Court to dismiss the case by following the *Calder* harm test, noting that Defendant Benn did not expressly aim her conduct at Texas. Further, Defendant Benn focuses the Court's attention on a post-*Calder* decision from the Fourth Circuit, *Young v. New Haven Advocate.*[42]

In *Young*, two Connecticut newspapers published and posted on the Internet articles concerning the housing of Connecticut prisoners in Virginia.[43] In the articles, the newspapers' reporters referred specifically to the misconduct of Warden *Young*, the warden at one Virginia prison on which the articles focused.[44] In addition to their specific references to Virginia and their awareness of Warden *Young's* presence in Virginia, the reporters made investigatory phone calls to the Virginia Department of Corrections.[45] Despite these contacts with Virginia, the Fourth Circuit refused to find personal jurisdiction over the newspapers, concentrating on the fact that the articles were targeted at Connecticut, not Virginia.[46]

Unlike the present case, however, personal jurisdiction in *Young* rested solely on the contacts arising from the newspapers' Internet-based activities. In fact, *Young* specifically limited Calder in the Internet context, noting "that application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state." [47] Because the newspapers simply placed information on the Internet without intentionally directing their websites to a Virginia audience, no personal jurisdiction existed.[48] Based on this decision, Defendant Benn reasons that because the broadcast was distributed to a South Carolina–Georgia audience and the website was not aimed at Texas, that the brunt of the harm was not directed at Texas.

While the Court agrees that Defendant Benn's phone conversation with Plaintiff, the broadcast, and the website alone may

---

41. *Calder,* 465 U.S. at 788–89, 104 S.Ct. 1482; see also *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

42. 315 F.3d 256 (4th Cir.2002).

43. *Id.* at 259.

44. *Id.*

45. *Id.* at 260.

46. *Id.* at 262–63.

47. *Id.*

48. *Id.* at 264 ("The newspapers did not post materials on the Internet with the manifest intent of targeting Virginia readers. Accordingly, the newspapers could not have 'reasonably anticipated being haled into court [in Virginia] to answer for the truth of the statements made in their articles.' ").

not establish personal jurisdiction over Benn, the Court focuses on the direct aim of the harm to distinguish this case from *Young*. Unlike *Young*, wherein the only contacts evaluated in the personal jurisdiction analysis stemmed from Internet-based activities, Defendant Benn interacted with the State of Texas in a more direct manner: Defendant Benn actually sent the allegedly defamatory videotapes and scripts to a television station in San Antonio. In doing so, Benn effectively distributed an arguably libelous publication in Texas. Although San Antonio did not air the tapes, with her distribution, Benn directly planted the seed for harm to Plaintiff in Texas. This fact, considered in conjunction with Benn's other contacts with Texas during the investigation, convinces this Court that it may properly assert jurisdiction over Defendant Benn.

■ Further, the Court finds that jurisdiction over Defendant Benn is proper because she reasonably anticipated being haled into a Texas court. The Fifth Circuit has made it clear that " 'the key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum.' "[49] Jurisdiction requires that a defendant's actions towards a forum result in a reasonable anticipation of "being haled into court there."[50] Reasonable anticipation of being haled into the forum state necessitates "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[51]

Under this standard, the evidence suggests that Defendant Benn purposefully availed herself of the benefits and protections of the State of Texas. In particular, Defendant Benn researched Texas's consent law concerning recording phone conversations before she interviewed Plaintiff. This, by itself, indicates to the Court that Benn sought the protection of Texas law. Additionally, Defendant Benn commented on the reporting obligations for the Texas Medical Board, suggesting that Benn sought the benefits of the information provided by this Texas agency. Accordingly, this Court finds that Defendant Benn has sufficient minimum contacts with the forum state to permit personal jurisdiction.

■ The Court's analysis, however, cannot stop there. Even if minimum contacts exist, the exercise of personal jurisdiction over a nonresident defendant will fail due process requirements if the exercise of jurisdiction offends "traditional notions of fair play and substantial justice."[52] In determining this fundamental fairness issue the Court must examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.[53] A defendant who has directed activities at forum residents must present

**49.** *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir.1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998).

**50.** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**51.** *Id.* at 475–76, 105 S.Ct. 2174; *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 427 (5th Cir.2005) (explaining that a court must determine if a defendant, by directing the allegedly tortious activities towards the forum, reasonably anticipated both the impact of the injury on the plaintiff and subsequent exercise of jurisdiction by the forum's courts).

**52.** *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

**53.** *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

a "compelling case" to render jurisdiction unreasonable.[54] Such a compelling case may exist if exercising jurisdiction over the defendant would "make litigation 'so gravely difficult and inconvenient' that a party unfairly at a 'severe disadvantage' in comparison to his opponent." [55]

Upon review of Defendant Benn's unfairness argument, the Court finds that these factors weigh in favor of jurisdiction in Texas. First, it is true that requiring Defendant Benn to stand trial in Texas will present a burden: Defendant Benn lives and works in the South Carolina/Georgia region. The forum state of Texas, however, has some interest in having the case within its bounds as it no doubt would like to protect the integrity of its medical doctors. Plaintiff would prefer that the conflict stay in Texas, citing the fact that, as a doctor, he must be on call for various surgeries. And while there may be more witnesses in South Carolina, there are at least some in Texas that would result in efficient resolution.

More than any of these factors individually, however, the Court believes that exercising personal jurisdiction over Defendant Benn is fair based on a practical consideration—if Defendant Benn picked a fight with an individual in Texas, she should consider that such a fight would be settled in Texas.[56] In sum, Defendant Benn has failed to provide the Court with a compelling case of substantial unfairness that prevents the exercise of jurisdiction. The Court notes, however, that while Defendant Benn's unfairness argument falls short of finding jurisdiction unconstitutional, the Court can still consider such factors in making venue determinations.[57] As such, the Court DENIES Defendant Benn's 12(b)(2) Motion to Dismiss.

## CONCLUSION

Plaintiff has presented a prima facie case of personal jurisdiction over Defendant Benn. Considering the "effects" test of *Calder* and Benn's contacts with Texas, the Court finds facts sufficient to establish personal jurisdiction. In accordance with these findings, the Court orders that Defendant Benn's 12(b)(2) Motion to Dismiss be DENIED.

It is so ORDERED.

---

**54.** *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174.

**55.** *Id.* at 478, 105 S.Ct. 2174 (citing *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

**56.** *See Revell,* 317 F.3d at 476 ("[In determining fairness] we look the geographic focus of the article, not the bite of the defamation, the

blackness of the calumny, or who provoked the fight.").

**57.** *See, e.g.,* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"). In fact, Defendant Benn has already filed a Motion to Change Venue (Docket No. 12).