**THE JOHNS HOPKINS UNIVERSITY,**
Appellant

v.

**Rahul K. NATH, M.D., Appellee.**

and

**Rahul K. Nath, M.D., Appellant**

v.

**Allen J. Belzberg, M.D., Appellee.**

No. 14–06–01083–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 25, 2007.

William W. Ogden, Houston, TX, for appellants.

Bruce Marvin Flowers, Michael A. Logan, Dallas, William Robert Pilat, Houston, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Rahul K. Nath sued Johns Hopkins University (JHU) and Allen J. Belzberg, claiming defamation and tortious interference. Both JHU and Belzberg specially appeared. The trial court granted the special appearance of Belzberg, dismissing him from the suit, but denied the special appearance of JHU. JHU appeals the denial of its special appearance, and Nath appeals the granting of Belzberg's. Because the evidence is sufficient to support the trial court's implied finding that exercising personal jurisdiction over Nath's claims against Belzberg would violate due process, we affirm the trial court's order granting Belzberg's special appearance. Because, under the undisputed evidence regarding JHU's contacts with Texas, JHU does not have sufficient contacts to satisfy due process, we reverse the trial court's order denying JHU's special appearance and remand the case to the trial court with instructions to dismiss the claims against JHU for lack of personal jurisdiction.

## Factual and Procedural Background

Dr. Rahul Nath is a Board Certified reconstructive microsurgeon. He is, or has been, the director of the Texas Nerve and Paralysis Institute in Houston as well as the chairman and founding member of the International Society of Brachial Plexus and Nerve Injury. He specializes in the treatment of brachial plexus injuries, and he is one of only a handful of doctors in the United States who specialize in brachial plexus repair operations. His patients, most of whom first come to him as infants, hail from inside and outside the state of Texas.

Nath formerly worked with Dr. Saleh Shenaq at the Texas Children's Hospital Brachial Plexus Clinic in Houston. In July of 2004, Nath left the Clinic to open his own practice, and approximately a year later, Shenaq did the same. Shenaq allegedly made defamatory statements about Nath to current and prospective patients. These alleged statements gave rise to the initial suit, in which Nath sued Shenaq, Baylor College of Medicine (as Shenaq's employer, sponsor, and promoter), and Texas Children's Hospital, an entity affiliated with Baylor, which gave privileges to Shenaq. His suit alleged tortious interference with existing and prospective business relationships and contracts, and defamation.

During May of 2005, JHU held and sponsored the Brachial Plexus Injury Symposium, in Baltimore, Maryland. During the Symposium, Dr. Allan Belzberg spoke with several patients of Nath who had attended the conference. Belzberg allegedly said several disparaging things about Nath to these patients, including that Nath was being investigated by the FBI for fraudulent actions, that Nath had been fired by Baylor College of Medicine, that Texas doctors like Nath do not perform the medical procedures they say they will perform, but rather "just close the patients up," that Nath did not publish his research, and that Nath was patenting certain necessary medical procedures and then charging excessive fees to perform those procedures. Two patients to whom these statements were made were from Texas, and one was from California. Belzberg allegedly also made similar statements, both in person at the conference and in subsequent emails, to a Canadian doctor who attended the conference.

After hearing of Belzberg's statements, Nath amended his petition to add defamation and tortious interference claims against Belzberg and his employer JHU. JHU and Belzberg separately filed special appearances, challenging the court's ability to exercise personal jurisdiction over them. After a non-evidentiary hearing, the trial court denied the special appearance of JHU, but granted the special appearance of Belzberg. JHU appeals the denial of its special appearance, and Nath appeals the granting of Belzberg's.

## Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, the trial court issues no findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *See id.* at 795. Parties can challenge the legal and factual sufficiency of these implied factual findings. *Id.* In conducting a legal sufficiency analysis, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable fact-

finder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet,* 61 S.W.3d at 616.

### Law of Personal Jurisdiction

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over non-resident defendants. *Marchand,* 83 S.W.3d at 795; *see* TEX. CIV. PRAC. & REM.CODE §§ 17.041–.045. The statute permits the exercise of jurisdiction over non-resident defendants who do business in the state of Texas, and the statute lists activities that constitute "doing business." *Id.;* TEX. CIV. PRAC. & REM.CODE § 17.042. However, the list is not exclusive. *Marchand,*

83 S.W.3d at 795. The language of section 17.042 extends the Texas courts' personal jurisdiction as far as federal constitutional due process will permit. *Id.* (citing *U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977)).

Federal due process allows the exercise of personal jurisdiction over non-resident defendants when (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 166 (Tex., 2007). For a defendant to have sufficient contacts with the forum, it is essential that there be some act by which the defendant "purposefully avails" itself of the privilege of conducting activities in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Texas Supreme Court has identified at least three aspects of the "purposeful availment" inquiry. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784–85 (Tex.2005). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* at 785. Second, the contacts relied upon must be purposeful rather than random, isolated, or fortuitous. *Id.* Third, the defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *Id.*

A defendant's minimum contacts can give rise to either specific or general jurisdiction. *See PHC–Minden, L.P.,* 235 S.W.3d at 166. Specific jurisdiction is established if the claims in question arise from or relate to the defendant's purposeful contacts with the forum. *Id.* General jurisdiction is established if the

defendant has continuous and systematic contacts with the forum, without considering the plaintiff's claims. *See id.* at 166–67.

A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a more demanding minimum-contacts analysis, with a substantially higher threshold. *Id.* at 168. Usually, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services, or maintaining one or more offices there. *Id.* Activities that are less extensive than that will not qualify for general jurisdiction. *Id.* Courts analyze general jurisdiction without regard to the nature of the alleged claims. *See id.* As an analytical device to insure that any related forum activities are not improperly infiltrating the dispute-blind inquiry into general jurisdiction, the Texas Supreme Court has stated that courts should consider a hypothetical claim that has no connection to Texas and ask if the defendant's purposeful contacts with Texas are so pervasive and extensive that they are sufficient to support personal jurisdiction as to such a claim. *Id.* at 168–69. In conducting a general-jurisdiction analysis, we are concerned with the quality rather than the quantity of the contacts. *See Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 809–10 (Tex.2002). In assessing the quality of the contacts, we do not view each contact in isolation; rather, we carefully investigate, compile, sort, and analyze all contacts to determine if together they are sufficient to support general jurisdiction. *See id.* at 809. For this reason, a general jurisdiction inquiry can be tedious. *See PHC–Minden, L.P.,* 235 S.W.3d at 170.

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *Brocail v. Anderson,* 132 S.W.3d 552, 556 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *Id.*

**Jurisdictional Analysis**

**A. No Jurisdiction Over Belzberg**

Nath argues that specific jurisdiction over Belzberg is proper because Belzberg's actions were intended to injure Nath's reputation and practice in Texas, making Texas and a resident of Texas the foci of his tortious conduct. He relies on *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and the "effects test" based thereon. However, in *Michiana,* the Texas Supreme Court rejected the "effects test." *See Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 788–92 (rejecting the "effects test"); *Cerbone v. Farb,* 225 S.W.3d 764, 771–72 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (concluding that the *Michiana* court rejected the "effects test"). The *Michiana* court did not construe the finding of specific jurisdiction in *Calder* as turning on the defendants' alleged wrongdoing intentionally directed at a forum resident; rather, the *Michiana* court construed *Calder's* finding of specific jurisdiction as turning on the defendants' "substantial 'presence'" in the forum state based on the fact that the allegedly defamatory article on which the defendants collaborated was for their employer, the *National Enquirer,* which sold more than 600,000 copies in the forum state every week. *See Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 789. Thus, under *Michiana, Calder* applies only in cases in which the nonresident's contacts with the forum are significant enough to constitute a "substantial presence" in

the forum.[1] *See id.; see also Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 585 (Tex.2007) (holding that, for a nonresident defendant's forum contacts to support the exercise of specific jurisdiction, there must be a substantial connection between the defendant's purposeful contacts with the forum and the operative facts of the litigation).

■ In this case, although Nath allegedly has suffered harmful effects in Texas, nothing in the evidence shows a substantial connection between the defendants' purposeful contacts with Texas and the operative facts of the litigation. All of the allegedly tortious activity occurred in Baltimore, Maryland, or in emails to a Canadian doctor, not in Texas. Belzberg did not come to Texas, he did not call, and he did not send correspondence to Texas.[2] In no way did Belzberg reach out to the state of Texas.

Nath asserts that Belzberg's allegedly defamatory statements at the Symposium in Maryland were purposeful attempts to interfere with Nath's business relations with two of Nath's Texas patients and to solicit them to be Dr. Belzberg's patients. However, this alleged defamation and solicitation was not sufficiently directed or targeted at Texas. *See Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir.2002) (distinguishing *Calder* on the ground that the article was not directed at Texas readers as distinguished from readers in other states). The statements and emails by Belzberg were targeted at a fellow doctor, residing in Canada, and patients of Nath, who admittedly come from all across the country.[3] Thus, the statements were not targeted at Texas residents, but at people with any connection with Nath—a group with a geographical range far beyond Texas.

Nothing in the evidence regarding Belzberg's contacts with Texas shows that Nath's claims against him arise from or relate to Belzberg's purposeful contacts with Texas or that there is a substantial

1. In his brief, Nath argues that *Calder* and *Keeton* focus on the circulation of periodicals because the large volume of circulation in each case allowed an inference that the defamatory statements were actually read in California and New Hampshire respectively. We disagree with this characterization of those cases. The Supreme Court discussed the large circulations in those cases because they demonstrated the defendants' extensive activities in the forum, not because they showed that the defamation was read in the forum. The *Michiana* court pointed to *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), as proof that the defendants' activities in the forum—rather than the residence of the victim—was "the important factor" in determining the jurisdictional question. *See Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 789 (noting that the United States Supreme Court in *Keeton* placed weight on the fact that defendant had sold more than 10,000 copies of its magazine every month in the forum state, in which the plaintiff was not a resident). Therefore, contrary to Nath's position, the fact that it is

uncontroverted that the allegedly slanderous statements were heard does nothing in this case to show that Belzberg or JHU have sufficient minimum contacts with Texas.

2. Nath cites to *Brown v. Flowers Indus., Inc.,* 688 F.2d 328 (5th Cir.1982), as a very similar case to this one. But even in *Brown,* the exercise of personal jurisdiction was based on an allegedly defamatory telephone call made by a defendant directly to the forum. *See id.* at 330–31; *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 790 n. 70. Nath also relies on *Paul Gillrie Inst., Inc. v. Universal Computer Consulting, Ltd.,* 183 S.W.3d 755 (Tex.App.-Houston [1st Dist.] 2005, no pet.). *Paul Gillrie* is not on point because that case involved publishing and mailing an allegedly defamatory article to subscribers within Texas, many of whom paid for their subscriptions. *See id.* at 758.

3. Of the four affidavits produced by Nath in response to the special appearance, two were from Texas residents and two were from non-Texas residents.

connection between Belzberg's purposeful contacts with Texas and the operative facts of the litigation. *See Moki Mac River Expeditions,* 221 S.W.3d at 585–88. We, therefore, affirm the trial court's order granting Belzberg's special appearance. Nath's issue is overruled.

## B. No Jurisdiction Over JHU

JHU also appeals the denial of its special appearance. Nath's case against JHU is based on respondeat superior, not on specific tortious acts committed by JHU. Specific jurisdiction over JHU would have to be premised on specific jurisdiction over Belzberg. Having found that specific jurisdiction does not exist over Belzberg, it cannot exist over JHU. Therefore, we examine JHU's contacts with Texas to determine if the trial court's holding that it had general jurisdiction over JHU was correct.

JHU neither owns nor leases any buildings, sites, or facilities in the state of Texas. JHU's principal place of business is in Baltimore, Maryland. The undisputed evidence shows that JHU's contacts with Texas are as follows:

- JHU has ten employees who reside in Texas. Most are part time, and in each case their residence in Texas is based on personal circumstance or the unilateral act of a third party. Eight employees perform jobs that are online or require national travel and have chosen Texas as their home for personal reasons. Two employees are nurse practitioners provided by JHU to PepsiCo, and they are subject to employment at whatever facility Pepsi designates. Pepsi assigned these two nurse practitioners to Mesquite and Houston respectively.
- Some of JHU's students are from Texas. In 2006, thirty-nine Texas residents enrolled as undergraduates. JHU has mailed typical undergraduate admission circulars to Texas and has participated in three undergraduate recruitment receptions in Texas. JHU also has athletic teams that sometimes compete with Texas universities.
- JHU engages in collaborative research, largely biomedical or otherwise scientific, with research institutions in Texas such as M.D. Anderson or Baylor. These collaborations come about due to conditions placed on grant money or because of recognized fields of expertise. JHU's end of the research collaboration is performed at the JHU facilities in Baltimore. In 2006, research collaboration with Texas institutions constituted less than one percent of JHU's research grants.
- JHU has been the beneficiary of gifts, bequests and donations from Texas residents. Specifically, JHU has received by donation or bequest oil and gas royalty interests in Texas. These oil and gas royalty payments yielded $215,219 in 2006, representing some .08% of JHU's annual investment income. JHU was named in 2005 as a defendant in a will contest proceeding in Angelina County, where the sons of a JHU donor are contesting the decedent's donation to the university.
- JHU maintains a registered agent for service of process in Texas, arising from consulting work JHU did for some school districts in Texas in the past. The consulting work has since been discontinued.
- JHU maintains an informational website that can be accessed by Texas citizens. Its primary function is to provide information about JHU's academic curricula, its faculty and personnel, and to offer a wide array of information about JHU's research and educational operations.

### 1) Some Contacts Are Not Purposeful

■ We find that several of the alleged contacts are not purposeful contacts by JHU with Texas. The fact that JHU had ten employees in Texas shows no availment of Texas law because JHU has shown that each of those employees lives in Texas either of their own accord, or because a third party, namely PepsiCo, ordered them to do so. Their location in Texas is wholly independent of any decision by JHU.

Likewise, the evidence shows that, although JHU collaborates on research projects with Texas institutions from time to time, this does not reflect purposeful contacts by JHU with Texas. The evidence shows that the grants are shared with Texas institutions on occasion because the sponsors have donated money to JHU and a Texas institution jointly, or because highly specialized or experienced researchers happen to work at Texas institutions. These collaborations are not the result of a targeted effort to conduct business in Texas, but rather they result from the wishes of the grant sponsor or the desire to work with the most qualified researchers, regardless of where they may be. *See Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 785 ("a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.' "); *see also Gallant v. Trustees of Columbia Univ.,* 111 F.Supp.2d 638, 642 (E.D.Pa.2000) (holding that there was no purposeful availment when the record did not show that research contracts in forum were the result of university's purposeful or extensive availment, as opposed to generally participating in interstate academic activities).

### 2) Other Contacts Are Not Substantial

■ JHU's other contacts with Texas are simply not substantial enough to support general jurisdiction. *See PHC–Minden, L.P.,* 235 S.W.3d at 170–71. JHU is a defendant in a will-contest proceeding based on its status as a beneficiary under the will being challenged, and JHU has answered without contesting personal jurisdiction. However, this failure to contest personal jurisdiction in a case in which the court would apparently be able to exercise specific jurisdiction does not show that JHU has continuous and systematic contacts with Texas. Likewise, JHU's status as a defendant in this will-contest suit is not a high quality contact supporting general jurisdiction.

JHU has mailed recruiting literature to students in Texas, has attended three undergraduate receptions, has admitted thirty to fifty undergraduates from Texas, and has athletics teams that compete in the state from time to time. These types of contacts would give a defendant little reason to believe it could be haled into court. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *PHC–Minden, L.P.,* 235 S.W.3d at 170.

■ JHU operates a website which can be accessed from Texas. However, the website's primary function is to provide information about the university "for students, prospective students or other faculty who may have an interest in additional information related to JHU's academic or research activities." The website is not aimed specifically at students in Texas. Rather it is an informational tool for any prospective student, regardless of location, who wants to gather information on JHU.

■ Internet contacts are evaluated on a "sliding scale." *Experimental Aircraft Ass'n, Inc. v. Doctor,* 76 S.W.3d 496, 506 (Tex.App.-Houston [14th Dist.] 2002, no pet.). At one end of the spectrum, the

website may support a finding of personal jurisdiction when a defendant does business over the internet by entering into contracts and through the repeated transmission of computer files. *Id.* At the other end, personal jurisdiction cannot be based on the passive posting of information on the internet. *Id.* at 506–07. Courts evaluate the middle ground contacts based on the level of interactivity and the commercial nature of the exchange of information. *Id.* at 507.[4]

Nath argues that the website has been held in the past to support the establishment of personal jurisdiction, citing an unreported Louisiana federal district court case. *See Peyman v. Johns Hopkins Univ.,* No. Civ. A–99–3717, 2000 WL 973665 (E.D.La., July 12, 2000). The court in *Peyman* gave very little detail about the JHU website, stating that the JHU website advertises to students and "solicit[s] contributions from alumni." *Id.* at *2. The court, admitting that no contracts are entered into via the website, nevertheless concluded that it is "more than passive advertisement" and therefore, falls into the middle range of the sliding scale. *Id.* at *4. The court then used the website as a contact supporting jurisdiction within a general jurisdictional analysis. *Id.* at *3–4.

While the *Peyman* court stressed that JHU's website is used to solicit contributions, in this case, the only evidence of the nature of JHU's website is an affidavit from the Executive Director of Communications and Public Affairs for JHU. He states that the primary purpose of the website is to provide information. There is no mention of business being transacted

on the website, or even interactivity on the website. Under these facts, the website is not a substantial factor in favor of jurisdiction. *See Experimental Aircraft Ass'n, Inc.,* 76 S.W.3d at 506–07.

JHU also has oil and gas royalty interests in the state of Texas. However, owning oil and gas interests is not enough of a contact to confer general jurisdiction. *See Shaffer v. Heitner,* 433 U.S. 186, 213, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (holding that ownership of property in the forum alone is not sufficient to support general jurisdiction); *Bryant v. Roblee,* 153 S.W.3d 626, 630–31 (Tex.App.-Amarillo 2004, no pet.) (holding that ownership of real property in Texas by itself does not establish general jurisdiction and that bank did not have continuous and systematic contacts with Texas despite holding real estate liens on eleven properties in Texas securing loans on an aggregate principal amount of about $10,000,000). Moreover, these royalty interests represented only .08% of JHU's investment income last year.

Maintaining an agent for service of process also does not by itself give rise to general jurisdiction, but is only a factor to be considered in the jurisdictional analysis. *See Zamarron v. Shinko Wire Co., Ltd.,* 125 S.W.3d 132, 144 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *see also Seimer v. Learjet Acquisition Corp.,* 966 F.2d 179, 181–82 (5th Cir.1992). The importance of the registration in this case is diminished because JHU proved that the agent was registered a decade ago due to some work it was doing with Texas school districts. This work has since been terminated.

4. The Fifth Circuit has noted that this "sliding scale" test is not well suited to the general jurisdiction inquiry. *Revell,* 317 F.3d at 471. Nevertheless, courts, including this one, have used it in a general jurisdiction analysis to

determine whether a defendant's website is a significant factor in support of jurisdiction. *See Experimental Aircraft Ass'n, Inc.,* 76 S.W.3d at 507. Therefore, we follow this precedent.

In summary, when JHU's purposeful contacts with the forum are cumulated, they do not amount to the type of continuous and systematic activity in the forum necessary to exercise general jurisdiction. JHU has not been engaged in significant and longstanding business in Texas. *See PHC–Minden, L.P.*, 235 S.W.3d at 168–71 (holding that isolated trips to Texas, more than $1,500,000 in purchases from Texas vendors, and two contracts with Texas entities were not substantial enough to support general jurisdiction). Nor is the sum of the above purposeful contacts great enough to meet the more demanding minimum-contacts analysis of general jurisdiction. *See id.* JHU's purposeful contacts with Texas are not pervasive and extensive enough to allow Texas courts to exercise personal jurisdiction over a hypothetical claim against JHU that has no connection to Texas. *See id.* at 168–69. Under the uncontroverted evidence regarding JHU's contacts with Texas, the trial court erred in impliedly finding general jurisdiction. Because the evidence relating to JHU's contacts with Texas conclusively proved that JHU has not established sufficient minimum contacts with Texas to allow the exercise of personal jurisdiction over JHU, we conclude that the trial court erred in denying JHU's special appearance. JHU's issue is sustained.

## Conclusion

We affirm the trial court's order granting Belzberg's special appearance, but reverse the trial court's order denying JHU's special appearance, sever the latter order, and remand to the trial court with instructions to dismiss all claims against JHU for want of personal jurisdiction.