COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-08-286-CV

DAVID PEARL                                                                    APPELLANT

V.

DALE ABSHIRE                                                                   APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

This is an interlocutory appeal from the trial court's order denying appellant David Pearl's special appearance and motion to dismiss an internet defamation claim filed by appellee Dale Abshire. We reverse the trial court's order and dismiss the case.

---

[1] *See* Tex. R. App. P. 47.4.

## I. Background Facts

Dale Abshire brought suit against David Pearl alleging that Pearl made several defamatory statements on the Yahoo! Finance AXA internet "message board" or "bulletin board" (the Message Board) between March 16, 2006, and October 27, 2006. Those statements included language of a graphic sexual nature and at times referenced Abshire's prior employment in Texas, Abshire's alleged sexual harassment of women in the workplace in Texas, and Abshire's alleged resulting termination. One such statement reads:

> Dale Abshire, former MONY agent based in Texas was found guilty of findling [*sic*] chicks in the FT. [*sic*] Worth office.

> Now, Mr. Abshire has been spotted in the Belvue psych. ward, recovering from the BUTT pounding MONY gave him.

> YEP, Dale Abshire.

Another allegedly defamatory statement by Pearl reads in part:

> Yes, my name is Dale Abshire. I was terminated from MONY in the mid 1990's, because I couldn't keep my penis in my pants. I sexually harassed many women in the Texas offices, and was termianted [*sic*] for cause.

Prior to and during this period of time, Abshire had posted numerous messages on the Message Board accusing MONY (Mutual of New York), or its successor AXA, of conspiring with numerous political figures to commit fraudulent and illegal activities. Abshire posted these messages to increase

2

traffic to his websites detailing his allegations of conspiracy and illegal activity by MONY and AXA. Pearl is an employee of AXA and a resident of Kings Park, New York, and he does not dispute that he made the statements of which Abshire complains in response to Abshire's comments about AXA and MONY.

It is undisputed that Pearl was physically located at his home in New York when making the alleged statements, that Abshire was a resident of Texas at all times relevant to the litigation, and that Pearl had been provided information that Abshire resided in Texas. It is further undisputed that Pearl's alleged contacts with Texas are limited to his Message Board postings referencing Texas and that Pearl has never maintained a bank account in Texas, conducted personal business within Texas, knowingly purchased any tangible items or other personal property from Texas, paid any taxes in Texas, or owned, leased, rented, or controlled any real or personal property in Texas.

Based on these undisputed facts, Pearl filed a special appearance in which he claimed that the court lacked personal jurisdiction over him and moved for dismissal. Abshire alleged in response that Pearl "did business" in Texas by committing a tort, in whole or in part, in Texas and that Pearl's Message Board

3

statements established jurisdiction in Texas because they expressly mention Texas and were aimed at Texas readers, including Abshire.[2]

Following a hearing, the trial court denied Pearl's special appearance without making any findings of fact or conclusions of law. This interlocutory appeal followed.[3]

## II. Burden of Pleading and Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute.[4] Upon filing a special appearance, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction alleged by the plaintiff.[5] In other words, the defendant must disprove the existence of minimum contacts sufficient to establish personal jurisdiction over it—general, specific,

---

[2] At no point has Abshire specifically alleged whether Texas courts have general or specific jurisdiction, or both, over Pearl. However, Abshire has not made any attempt to establish, and we find no evidentiary basis for, general jurisdiction.

[3] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008).

[4] *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002); *Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157, 163 (Tex. App.—Fort Worth 2008, no pet.).

[5] *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003); *Glencoe Capital*, 269 S.W.3d at 163.

or both—as alleged by the plaintiff.[6] Absent allegations of any specific, purposeful act through which the defendant can be said to have sought a benefit by availing itself of the jurisdiction, evidence that a defendant is a nonresident is sufficient to meet its burden.[7]

Whether a trial court has personal jurisdiction over a defendant is a question of law.[8] However, a trial court may be required to resolve disputed questions of fact before resolving the jurisdiction issue.[9] When the trial court does not issue express findings of fact and conclusions of law, and the record on appeal includes both the reporter's record and the clerk's record, the trial court's implied findings are not conclusive and may be challenged for their factual and legal sufficiency.[10] If findings of fact are not issued, the reviewing court should assume that the trial court found all factual disputes favorable to

---

[6] *Am. Type Culture Collection*, 83 S.W.3d at 807; *Glencoe Capital*, 269 S.W.3d at 163.

[7] *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *Glencoe Capital*, 269 S.W.3d at 163.

[8] *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794; *Luxury Travel Source v. Am. Airlines, Inc.*, 276 S.W.3d 154, 160–61 (Tex. App.—Fort Worth 2008, no pet.).

[9] *BMC Software*, 83 S.W.3d at 794; *Glencoe Capital*, 269 S.W.3d at 163–64.

[10] *BMC Software*, 83 S.W.3d at 795; *Glencoe Capital*, 269 S.W.3d at 164; *Luxury Travel Source*, 276 S.W.3d at 161.

its order.[11] We may review the trial court's resolution of disputed fact issues for legal and factual sufficiency under the same standards of review that we apply in reviewing a jury's or trial court's findings of fact at trial.[12] If the trial court's express or implied findings are supported by sufficient evidence, or if the material facts are undisputed, we decide as a matter of law whether those facts negate all bases for personal jurisdiction.[13]

### III.  Personal Jurisdiction

Texas courts may assert personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.[14]

---

[11] *Am. Type Culture Collection*, 83 S.W.3d at 806; *BMC Software*, 83 S.W.3d at 795 (noting that simply more than a scintilla of evidence will defeat a no-evidence challenge).

[12] *Luxury Travel Source*, 276 S.W.3d at 161.

[13] *BMC Software*, 83 S.W.3d at 795–98; *Glencoe Capital*, 269 S.W.3d at 164.

[14] *Moki Mac*, 221 S.W.3d at 574; *Luxury Travel Source*, 276 S.W.3d at 161.

## A.    Texas Long-Arm Statute

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants.[15] That statute permits Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas.[16] Pertinent to this case, a nonresident "does business" in Texas if it "commits a tort in whole or in part in this state."[17]

## B.    Due Process and Minimum Contacts

Even if a nonresident's activities constitute "doing business" under the Texas long-arm statute, Texas courts may exercise personal jurisdiction over a nonresident defendant only "as far as the federal constitutional requirements of due process will allow."[18] Therefore, the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal

---

[15] Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (Vernon 2008); *BMC Software*, 83 S.W.3d at 795; *Luxury Travel Source*, 276 S.W.3d at 161.

[16] Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *BMC Software*, 83 S.W.3d at 795; *Luxury Travel Source*, 276 S.W.3d at 161.

[17] Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2); *Moki Mac*, 221 S.W.3d at 574.   The list of activities set forth in section 17.042 is not exclusive.  *BMC Software*, 83 S.W.3d at 795.

[18] *Moki Mac*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

due-process limitations.[19]   Under federal due-process requirements, personal

jurisdiction is proper when the nonresident defendant has established minimum

contacts with the forum state, and the exercise of jurisdiction comports with

"traditional notions of fair play and substantial justice."[20]

Minimum contacts are sufficient for personal jurisdiction when the

nonresident defendant "purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of

its laws."[21]   The Texas Supreme Court states that there are three parts to a

"purposeful availment" inquiry:

> (1) Only the defendant's contacts with the forum are relevant, not
> the unilateral activity of another party or a third person;[22]
>
> (2) The contacts relied upon must be "purposeful" rather than
> merely fortuitous;[23] and

---

[19] *Moki Mac*, 221 S.W.3d at 575.

[20] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (citation omitted); *see also Moki Mac*, 221 S.W.3d at 575.

[21] *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958) (quoting *Int'l Shoe Co.*, 326 U.S. at 319, 66 S. Ct. at 159); *Moki Mac*, 221 S.W.3d at 575;  *Michiana*, 168 S.W.3d at 784.

[22] *Moki Mac*, 221 S.W.3d at 575; *Michiana*, 168 S.W.3d at 785 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)); *Luxury Travel Source*, 276 S.W.3d at 162.

[23] *Moki Mac*, 221 S.W.3d at 575; *Michiana*, 168 S.W.3d at 785 (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183); *see also Luxury*

8

(3) The "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction."[24]

The nonresident defendant's conduct must satisfy each of these three criteria to establish jurisdiction in the forum state.[25]

## IV. Purposeful Availment

In one issue, Pearl argues that the trial court erred by denying his special appearance because he did not purposefully avail himself of the privilege of conducting activities in Texas. He contends that his contacts with Texas were initiated by Abshire and, thus, fortuitous rather than purposeful and that he did not purposefully direct his comments to a Texas forum.

In *Michiana* the Texas Supreme Court said:

For half a century, the touchstone of jurisdictional due process has been "purposeful availment." Since *Hanson v. Denckla*, "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[26]

---

*Travel Source*, 276 S.W.3d at 162.

[24] *Moki Mac*, 221 S.W.3d at 575 (quoting *Michiana*, 168 S.W.3d at 785); *see also Luxury Travel Source*, 276 S.W.3d at 162.

[25] *See*, *e.g.*, *Michiana*, 168 S.W.3d at 785.

[26] *Michiana*, 168 S.W.3d at 784 (citing *Hanson v. Denckla*, 357 U.S. at 253, 78 S. Ct. at 1240) (emphasis supplied in the *Michiana* opinion).

In determining purposeful availment, the nonresident's actions must not be the result of the actions of another party or a nonparty, nor may they be a mere fortuity: "a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'"[27]

To determine whether internet activity constitutes purposeful availment, Texas courts have characterized such activity within one of three categories on a sliding scale.[28] "At one end of the scale are websites clearly used for transacting business over the Internet such as entering into contracts and knowing and repeated transmitting of files of information, which may suffice to establish minimum contacts within a state."[29] At the other end are "passive" websites used only for advertising over the internet, "which are not sufficient to establish minimum contacts even though they are accessible to residents of

---

[27] *Id.* at 785 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)).

[28] *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex. App.—Fort Worth 2001, no pet.); *see also Johns Hopkins Univ. v. Nath*, 238 S.W.3d 492, 501–02 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *J.A. Riggs Tractor Co. v. Bentley*, 209 S.W.3d 322, 332 (Tex. App.—Texarkana 2006, no pet.).

[29] *Michel*, 45 S.W.3d at 677.

a particular state."[30]  In the middle are "interactive" websites, in which a potential customer and a host computer may exchange information.[31]

The internet message board Pearl used to publish his statements is an interactive website that allows users to post and read information.[32] Thus, we determine whether purposeful availment with the forum exists based on the type and degree of interaction between Pearl and the board.[33]

Based on our review of the record, we conclude that Pearl's internet connections with Texas were in fortuitous response to the postings of a Texas resident, Abshire.  By his own admission, Abshire purposefully posted messages in an attempt to prompt Message Board readers like Pearl to respond,[34] and he acknowledged that his posts had, from time to time, provoked vitriolic responses.  There is no evidence that Pearl ever posted any message about Abshire, except in response to, and shortly following, an initiating post by Abshire.  Although some statements reference Texas, there

---

[30] *Id*.

[31] *Id*.

[32] *See generally Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002) (noting that, because "the [web site's] visitor may participate in an open forum hosted by the website," it "is thus interactive, and we must evaluate the extent of this interactivity").

[33] *See Michel*, 45 S.W.3d at 677.

[34] Pearl argues that Abshire is thus a "troll" or an "internet troll."  We do not find this label particularly useful, but we do note that Abshire's stated intent to prompt a response from among the Message Board's readers is significant.

11

is no evidence that Pearl directed his statements at Texas other than the fact that Abshire happened to be located in Texas at the time Pearl's messages were posted. Because Pearl's internet contacts were in response to Abshire's posts, it is merely fortuitous that Abshire is a Texas resident and was located in Texas when Pearl posted his statements. We, therefore, hold that Pearl's internet contacts with Texas do not constitute purposeful availment under *Michiana*.[35]

## V. Conclusion

For the foregoing reasons, we reverse the trial court's denial of Pearl's special appearance and dismiss the case.[36]

PER CURIAM

PANEL: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DELIVERED: July 9, 2009

---

[35] *See Michiana*, 168 S.W.3d at 781–92 (finding no purposeful contact because the nonresident defendant's sale in Texas resulted from the mere fortuity that the plaintiff happened to reside in Texas and not from any affirmative efforts by the defendant). Because we hold that the contacts Abshire relies on were merely fortuitous, we do not address whether Pearl sought some benefit, advantage, or profit by the contact. *See* Tex. R. App. P. 47.1; *Michiana,* 168 S.W.3d at 785.

[36] Abshire asserts in a cross-point that the trial court improperly admitted Pearl's affidavit testimony over objection because it "contained legal conclusions, hearsay statements and statements relating to analysis and opinion testimony of posting data conducted after his deposition." Because the objected to testimony is duplicative of the undisputed facts recited herein, we need not reach Abshire's cross-point. *See* Tex. R. App. P. 47.1.

12