COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-286-CV

 

 

DAVID PEARL                                                                     APPELLANT

 

                                                   V.

 

DALE ABSHIRE                                                                      APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

This is an interlocutory appeal from the trial
court=s order
denying appellant David Pearl=s
special appearance and motion to dismiss an internet defamation claim filed by
appellee Dale Abshire.  We reverse the
trial court=s order and dismiss the case.








                                      I.  Background Facts

Dale Abshire brought suit
against David Pearl alleging that Pearl made several defamatory statements on
the Yahoo! Finance AXA internet Amessage
board@ or Abulletin
board@ (the
Message Board) between March 16, 2006, and October 27, 2006.  Those statements included language of a
graphic sexual nature and at times referenced Abshire=s prior
employment in Texas, Abshire=s
alleged sexual harassment of women in the workplace in Texas, and Abshire=s
alleged resulting termination.  One such
statement reads: 

Dale
Abshire, former MONY agent based in Texas was found guilty of findling [sic]
chicks in the FT. [sic] Worth office. 


 

Now,
Mr. Abshire has been spotted in the Belvue psych. ward, recovering from the
BUTT pounding MONY gave him.  

 

YEP,
Dale Abshire.  

 

Another allegedly defamatory statement by Pearl
reads in part: 

Yes,
my name is Dale Abshire.  I was
terminated from MONY in the mid 1990's, because I couldn=t keep my penis in my
pants.  I sexually harassed many women in
the Texas offices, and was termianted [sic] for cause.  

 








Prior to and during this period
of time, Abshire had posted numerous messages on the Message Board accusing
MONY (Mutual of New York), or its successor AXA, of conspiring with numerous
political figures to commit fraudulent and illegal activities.  Abshire posted these messages to increase
traffic to his websites detailing his allegations of conspiracy and illegal
activity by MONY and AXA.  Pearl is an
employee of AXA and a resident of Kings Park, New York, and he does not dispute
that he made the statements of which Abshire complains in response to Abshire=s
comments about AXA and MONY.

It is undisputed that Pearl was
physically located at his home in New York when making the alleged statements,
that Abshire was a resident of Texas at all times relevant to the litigation,
and that Pearl had been provided information that Abshire resided in Texas.  It is further undisputed that Pearl=s
alleged contacts with Texas are limited to his Message Board postings
referencing Texas and that Pearl has never maintained a bank account in Texas,
conducted personal business within Texas, knowingly purchased any tangible
items or other personal property from Texas, paid any taxes in Texas, or owned,
leased, rented, or controlled any real or personal property in Texas.








Based on these undisputed facts,
Pearl filed a special appearance in which he claimed that the court lacked
personal jurisdiction over him and moved for dismissal.  Abshire alleged in response that Pearl Adid
business@ in
Texas by committing a tort, in whole or in part, in Texas and that Pearl=s
Message Board statements established jurisdiction in Texas because they
expressly mention Texas and were aimed at Texas readers, including Abshire.[2]

Following a hearing, the trial
court denied Pearl=s special appearance without
making any findings of fact or conclusions of law.  This interlocutory appeal followed.[3]

                     II.  Burden of Pleading and Standard of Review








The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the provisions of the Texas long‑arm
statute.[4]  Upon filing a special appearance, the
nonresident defendant assumes the burden of negating all bases of personal
jurisdiction alleged by the plaintiff.[5]  In other words, the defendant must disprove
the existence of minimum contacts sufficient to establish personal jurisdiction
over itCgeneral,
specific, or bothCas alleged by the plaintiff.[6]  Absent allegations of any specific,
purposeful act through which the defendant can be said to have sought a benefit
by availing itself of the jurisdiction, evidence that a defendant is a
nonresident is sufficient to meet its burden.[7]








Whether a trial court has
personal jurisdiction over a defendant is a question of law.[8]  However, a trial court may be required to
resolve disputed questions of fact before resolving the jurisdiction issue.[9]  When the trial court does not issue express
findings of fact and conclusions of law, and the record on appeal includes both
the reporter=s record and the clerk=s
record, the trial court=s implied findings are not
conclusive and may be challenged for their factual and legal sufficiency.[10]  If findings of fact are not issued, the
reviewing court should assume that the trial court found all factual disputes
favorable to its order.[11]  We may review the trial court=s
resolution of disputed fact issues for legal and factual sufficiency under the
same standards of review that we apply in reviewing a jury=s or
trial court=s findings of fact at trial.[12]  If the trial court=s
express or implied findings are supported by sufficient evidence, or if the
material facts are undisputed, we decide as a matter of law whether those facts
negate all bases for personal jurisdiction.[13]

                                    III.  Personal Jurisdiction

Texas courts may assert personal
jurisdiction over a nonresident defendant if (1) the Texas long‑arm
statute authorizes the exercise of jurisdiction, and (2) the exercise of
jurisdiction is consistent with federal and state constitutional due‑process
guarantees.[14]








A.     Texas Long-Arm Statute

The Texas long‑arm statute
governs Texas courts= exercise of jurisdiction over
nonresident defendants.[15]  That statute permits Texas courts to exercise
jurisdiction over a nonresident defendant who Adoes
business@ in
Texas.[16]  Pertinent to this case, a nonresident Adoes
business@ in
Texas if it Acommits a tort in whole or in
part in this state.@[17]

B.     Due Process and Minimum Contacts








Even if
a nonresident=s activities constitute Adoing
business@ under
the Texas long-arm statute, Texas courts may exercise personal jurisdiction
over a nonresident defendant only Aas far
as the federal constitutional requirements of due process will allow.@[18]  Therefore, the requirements of the Texas long‑arm
statute are satisfied if an assertion of jurisdiction accords with federal due‑process
limitations.[19]  Under federal due‑process requirements,
personal jurisdiction is proper when the nonresident defendant has established
minimum contacts with the forum state, and the exercise of jurisdiction
comports with Atraditional notions of fair play
and substantial justice.@[20]

Minimum
contacts are sufficient for personal jurisdiction when the nonresident
defendant Apurposefully avails itself of
the privilege of conducting activities within the forum State, thus invoking
the benefits and protections of its laws.@[21]  The Texas Supreme Court states that there are
three parts to a Apurposeful availment@
inquiry:

(1)
Only the defendant=s contacts with the forum
are relevant, not the unilateral activity of another party or a third person;[22]

 

(2)
The contacts relied upon must be Apurposeful@ rather than merely fortuitous;[23]
and 








(3)
The Adefendant must seek some
benefit, advantage or profit by >availing= itself of the jurisdiction.@[24]

 

The nonresident defendant=s
conduct must satisfy each of these three criteria to establish jurisdiction in
the forum state.[25]

                                   IV.  Purposeful Availment

In one
issue, Pearl argues that the trial court erred by denying his special
appearance because he did not purposefully avail himself of the privilege of
conducting activities in Texas.  He contends
that his contacts with Texas were initiated by Abshire and, thus, fortuitous
rather than purposeful and that he did not purposefully direct his comments to
a Texas forum.

In Michiana
the Texas Supreme Court said:

For
half a century, the touchstone of jurisdictional due process has been Apurposeful availment.@  Since Hanson v. Denckla, Ait is essential in each
case that there be some act by which the defendant purposefully
avails itself of the privilege of conducting activities within the forum
State, thus invoking the benefits and protections of its laws.@[26]

 








In determining purposeful availment, the
nonresident=s actions must not be the result
of the actions of another party or a nonparty, nor may they be a mere
fortuity:  Aa  defendant will not be haled into a
jurisdiction solely based on contacts that are >random,
isolated, or fortuitous.=@[27]








To determine whether internet
activity constitutes purposeful availment, Texas courts have characterized such
activity within one of three categories on a sliding scale.[28]  AAt one
end of the scale are websites clearly used for transacting business over the Internet
such as entering into contracts and knowing and repeated transmitting of files
of information, which may suffice to establish minimum contacts within a state.@[29]  At the other end are Apassive@
websites used only for advertising over the internet, Awhich
are not sufficient to establish minimum contacts even though they are accessible
to residents of a particular state.@[30]  In the middle are Ainteractive@
websites, in which a potential customer and a host computer may exchange
information.[31]

The internet message board Pearl
used to publish his statements is an interactive website that allows users to
post and read information.[32]  Thus, we determine whether purposeful
availment with the forum exists based on the type and degree of interaction
between Pearl and the board.[33]








Based on our review of the
record, we conclude that Pearl=s
internet connections with Texas were in fortuitous response to the postings of
a Texas resident, Abshire.  By his own
admission, Abshire purposefully posted messages in an attempt to prompt Message
Board readers like Pearl to respond,[34]
and he acknowledged that his posts had, from time to time, provoked vitriolic
responses.  There is no evidence that
Pearl ever posted any message about Abshire, except in response to, and shortly
following, an initiating post by Abshire. 
Although some statements reference Texas, there is no evidence that
Pearl directed his statements at Texas other than the fact that Abshire
happened to be located in Texas at the time Pearl=s
messages were posted.  Because Pearl=s
internet contacts were in response to Abshire=s posts,
it is merely fortuitous that Abshire is a Texas resident and was located in
Texas when Pearl posted his statements. 
We, therefore, hold that Pearl=s
internet contacts with Texas do not constitute purposeful availment under Michiana.[35]

                                          V.  Conclusion

For the foregoing reasons, we reverse the trial court=s denial
of Pearl=s
special appearance and dismiss the case.[36]

PER
CURIAM

PANEL: 
CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DELIVERED: 
July 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]At no point has Abshire specifically
alleged whether Texas courts have general or specific jurisdiction, or both,
over Pearl.  However, Abshire has not
made any attempt to establish, and we find no evidentiary basis for, general
jurisdiction.





[3]See Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(7) (Vernon
2008).





[4]Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 793 (Tex. 2002); Glencoe Capital Partners II,
L.P. v. Gernsbacher, 269 S.W.3d 157, 163 (Tex. App.CFort Worth 2008, no
pet.).





[5]Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002), cert. denied, 537 U.S. 1191
(2003); Glencoe Capital, 269 S.W.3d at 163.





[6]Am. Type Culture
Collection,
83 S.W.3d at 807; Glencoe Capital, 269 S.W.3d at 163.





[7]Michiana Easy Livin'
Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005); Glencoe Capital, 269 S.W.3d
at 163.





[8]Moki Mac, 221 S.W.3d at 574; BMC
Software, 83 S.W.3d at 794; Luxury Travel Source v. Am. Airlines, Inc.,
276 S.W.3d 154, 160B61 (Tex. App.CFort Worth 2008, no
pet.).





[9]BMC Software, 83 S.W.3d at 794; Glencoe
Capital, 269 S.W.3d at 163B64.





[10]BMC Software, 83 S.W.3d at 795; Glencoe
Capital, 269 S.W.3d at 164; Luxury Travel Source, 276 S.W.3d at 161.





[11]Am. Type Culture
Collection,
83 S.W.3d at 806; BMC Software, 83 S.W.3d at 795 (noting that simply
more than a scintilla of evidence will defeat a no-evidence challenge).





[12]Luxury Travel Source, 276 S.W.3d at 161.





[13]BMC Software, 83 S.W.3d at 795B98; Glencoe Capital,
269 S.W.3d at 164.





[14]Moki Mac, 221 S.W.3d at 574; Luxury
Travel Source, 276 S.W.3d at 161.





[15]Tex. Civ. Prac. &
Rem. Code Ann. '' 17.041B.045 (Vernon 2008); BMC
Software, 83 S.W.3d at 795; Luxury Travel Source, 276 S.W.3d at 161.





[16]Tex. Civ. Prac. &
Rem. Code Ann. ' 17.042; BMC Software,
83 S.W.3d at 795; Luxury Travel Source, 276 S.W.3d at 161.





[17]Tex. Civ. Prac. &
Rem. Code Ann. ' 17.042(2); Moki Mac,
221 S.W.3d at 574.  The list of
activities set forth in section 17.042 is not exclusive.  BMC Software, 83 S.W.3d at 795.





[18]Moki Mac, 221 S.W.3d at 575
(quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991)).





[19]Moki Mac, 221 S.W.3d at 575.





[20]Int'l Shoe Co. v.
Washington,
326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (citation omitted); see also
Moki Mac, 221 S.W.3d at 575.





[21]Hanson v. Denckla, 357 U.S. 235, 253, 78
S. Ct. 1228, 1240 (1958) (quoting Int'l Shoe Co., 326 U.S. at 319, 66 S.
Ct. at 159); Moki Mac, 221 S.W.3d at 575;  Michiana, 168 S.W.3d at 784.





[22]Moki Mac, 221 S.W.3d at 575; Michiana,
168 S.W.3d at 785 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,
475, 105 S. Ct. 2174, 2183 (1985)); Luxury Travel Source, 276 S.W.3d at
162.





[23]Moki Mac, 221 S.W.3d at 575; Michiana,
168 S.W.3d at 785 (quoting Burger King, 471 U.S. at 475, 105 S. Ct. at
2183); see also Luxury Travel Source, 276 S.W.3d at 162.





[24]Moki Mac, 221 S.W.3d at 575 (quoting
Michiana, 168 S.W.3d at 785); see also Luxury Travel Source, 276
S.W.3d at 162.





[25]See, e.g., Michiana,
168 S.W.3d at 785.





[26]Michiana, 168 S.W.3d at 784
(citing Hanson v. Denckla, 357 U.S. at 253, 78 S. Ct. at 1240) (emphasis
supplied in the Michiana opinion).





[27]Id. at 785 (quoting Keeton
v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478
(1984)).





[28]Michel v. Rocket Eng'g
Corp.,
45 S.W.3d 658, 677 (Tex. App.CFort Worth 2001, no pet.); see also Johns
Hopkins Univ. v. Nath, 238 S.W.3d 492, 501B02 (Tex. App.CHouston [14th Dist.]
2007, pet. denied); J.A. Riggs Tractor Co. v. Bentley, 209 S.W.3d 322,
332 (Tex. App.CTexarkana 2006, no pet.).





[29]Michel, 45 S.W.3d at 677.





[30]Id.





[31]Id.





[32]See generally Revell v.
Lidov,
317 F.3d 467, 472 (5th Cir. 2002) (noting that, because Athe [web site=s] visitor may
participate in an open forum hosted by the website,@ it Ais thus interactive, and
we must evaluate the extent of this interactivity@).





[33]See Michel, 45 S.W.3d at 677.





[34]Pearl argues that Abshire
is thus a Atroll@ or an Ainternet troll.@  We do not find this label particularly
useful, but we do note that Abshire=s stated intent to prompt a response from among
the Message Board=s readers is significant.





[35]See Michiana, 168 S.W.3d at 781B92 (finding no purposeful
contact because the nonresident defendant=s sale in Texas resulted from the mere fortuity
that the plaintiff happened to reside in Texas and not from any affirmative
efforts by the defendant).  Because we
hold that the contacts Abshire relies on were merely fortuitous, we do not
address whether Pearl sought some benefit, advantage, or profit by the contact.  See Tex. R. App. P. 47.1; Michiana,
168 S.W.3d at 785.





[36]Abshire asserts in a
cross-point that the trial court improperly admitted Pearl=s affidavit testimony
over objection because it Acontained legal conclusions, hearsay statements
and statements relating to analysis and opinion testimony of posting data
conducted after his deposition.@  Because
the objected to testimony is duplicative of the undisputed facts recited
herein, we need not reach Abshire=s cross-point. 
See Tex. R. App. P. 47.1.